**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILLIAM C. BOND,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 10-01617 (RCL)** |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **JUSTICE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## <u>MEMORANDUM OPINION</u>

### I.  INTRODUCTION

The point of a motion to alter or amend a previous judgment under Rule 59(e) is not to cry over spilled milk; rather, litigants should use this opportunity to highlight new evidence that would correct clear error or prevent manifest injustice.  Unfortunately, the plaintiff—who believes that he is a modern incarnation of David in his epic battle against Goliath (here, the Government and the Washington Post)—has illustrated none of these.  Plaintiff has filed lawsuit after lawsuit, the most recent on September 23, 2010, alleging, among other claims, that this Court conspired with Goliath to prevent him from obtaining justice.  But, plaintiff's claims were dismissed pursuant to Rule 12(b)(6) in December 2011.  Now pending before the Court is plaintiff William C. Bond's Motion to Alter or Amend the Court's December 6, 2011 Judgment and Memorandum Opinion.  Upon consideration of the Motion, the Oppositions, the Replies thereto, the applicable law, and the entire record herein, the Court denies the plaintiff's Motion for the reasons set forth below.

## II.      BACKGROUND[1]

Plaintiff's "highly embellished"[2] manuscript of his life story sets the stage for this

protracted litigation that has endured, in a variety of Courts and forms, for more than ten years.

Am. Compl. ¶ 1, Oct. 20, 2010, ECF No. 6.  Plaintiff filed the instant suit on September 23, 2010

against two categories of defendants: the United States Department of Justice ("DOJ") and DOJ

officials (collectively "Federal defendants"), and the Washington Post and its reporter, Manuel

Roig-Franzia (collectively "the Post").  Plaintiff's claims against both categories of defendants

are best understood coupled with a brief history of his past claims.

### A.      Factual History

In 2001, Bond discovered that someone stole the manuscript of his fictionalized

autobiography.  Am. Compl. ¶ 2, Oct. 20, 2010, ECF No. 6.  He then filed suit against the

alleged thieves in Maryland for conversion and invasion of privacy.  *Id.* ¶9.  When the District

Court ruled in favor of the defendants in that case, he appealed the decision to the Fourth Circuit

Court of Appeals, which affirmed and awarded substantial attorney's fees.  *Id.* ¶¶ 3, 7.  Rather

than cut his losses, plaintiff became increasingly paranoid.  He believed that the defendants and

the Federal judges assigned to his case were conspiring against him, and that the defendants lied

during trial.  *Id.* ¶11–14.  Attempting to expose these alleged misdeeds, Bond referred the

matters of perjury and judicial misconduct to the United States Attorney's Office for the District

---

[1] As this is the third memorandum opinion addressing the merits of this case, the Court will merely provide a brief overview of the pertinent facts relevant to plaintiff's most recent claims.  A more detailed description of the factual and procedural background can be found in this Court's December 6, 2011 Memorandum Opinion.  *See Bond v. U.S. Department of Justice*, 10-CV-01617, 2011 U.S. Dist. LEXIS 139898 (D.D.C. Dec. 6, 2011).

[2] Bond's manuscript describes the story of a juvenile boy who kills his father.  Bond, however, describes his manuscript as a "highly embellished" and "fictionalized" account of his past acts.  Am. Compl. ¶ 1, Oct. 20, 2010, ECF No. 6.  When Bond was 17, he beat his father to death with a hammer.  After he was arrested and detained in a juvenile detention facility, he entered into a guilty-plea agreement in juvenile Court, was transferred to a Baltimore hospital for psychological treatment, and was released in 1982.  *Bond v. Blum*, 317 F.3d 385, 390 (4th Cir. 2003).  Bond avers in his complaint that the Federal defendants have discriminated against him, in part because of this criminal record.

of Maryland ("USAO") in 2004.  *Id.* ¶ 15.  The USAO's office declined Bond's referral in

writing, citing "discretion" as a basis for its decision not to investigate.  *Id.* ¶ 22.  In the "summer

and fall" of 2006, Bond sought reconsideration of the USAO's decision, which the USAO again

declined.  *Id.* ¶ 24.  In response, Bond filed three related actions in Federal Court: a FOIA

request seeking the USAO's "'final report," and two actions alleging "fraud upon the Court" on

the part of the defendants in the Maryland case.  *Id.* ¶ 25.  The Federal District Court again

dismissed Bond's complaints and the Fourth Circuit affirmed.  *Id.* ¶ 26.  Undeterred by his lack

of success, Bond petitioned the Supreme Court for writs of certiorari in 2008 and 2009.  *Id.*  ¶ 27.

Unsurprisingly, the Supreme Court denied both petitions.  *Id.* ¶¶ 40, 43.

      While a denial of certiorari by the Supreme Court ends the legal journey for most

litigants, Bond decided that his case had to be heard.  Plaintiff filed suit in the United States

District Court for the District of Columbia on September 23, 2010, seeking damages and

mandamus relief for violations of his constitutional rights with respect to the Federal defendants

for violating the "civil rights laws of the United States, i.e., 42 USC [sic] § 1981 et. seq."  *Id.* 2.

He alleges that since 2004, the Federal defendants have acted with callous disregard for plaintiff

and his property, and have treated him prejudicially because of his juvenile-delinquent past and

the criminal subject matter of his manuscript.  *Id.* ¶ 71.

      Seeking public recognition of his legal battle, Bond pitched a story about his impending

petitions in the Supreme Court to a Washington Post reporter, Manuel Roig-Franzia.  *Id.* ¶ 29.

That Bond felt comfortable to pitch a story to this particular reporter is peculiar, since the same

journalist had previously written a piece about Bond that he characterized as "unflattering" in

2001.  *Id.*  Nevertheless, Bond fully cooperated with Roig-Franzia regarding the content of the

upcoming article, agreeing to sit for multiple photographs and interviews.  *Id.*  ¶ 39.  When the

long-awaited article appeared in the Washington Post in 2009, Bond found himself "surprised and humiliated" by the piece because Roig-Franzia included numerous subjects that they had allegedly agreed would remain off the record.  *Id.* ¶ 52.

Feeling slighted by the actions of both Roig-Franzia and the Washington Post (for failing to supervise its employee), Bond filed suit in this Court, seeking damages and injunctive relief for the common law torts of intentional infliction of emotional distress, fraud, negligent misrepresentation, and for breach of contract.  *Id.* ¶ 96.  He also alleges civil rights violations under "the D.C. Criminal code 22-3221 [sic] . . . and the Federal civil rights act."  *Id.* 2.  Bond states that Roig-Franzia knowingly misled him by making continual false representations to him. *Id.* ¶ 91.  Bond also maintains that there are "unknown individuals" at the Post who "are filled with ill will, spite and hatred" toward him and who "have taken actual acts to cause [him] harm." *Id.* ¶ 103.  He further alleges that the Post failed to supervise Roig-Franzia and that it failed "to right the wrong" it committed by publishing a "defamatory article."  *Id.* ¶ 102.

## B.    Procedural History

After plaintiff filed his Complaint, both categories of defendants filed motions to dismiss. Post Mot. Dismiss, Nov. 24, 2010, ECF No. 10; Federal Defs.' Mot. Dismiss, Dec. 30, 2010, ECF No. 24.  On December 6, 2011, this Court issued its Memorandum Opinion and Judgment, granting the defendants' Motions to Dismiss and denying plaintiffs' Motion to Strike and Motion for Leave to File a Second Amended Complaint.  Mem. Op. 2, Dec. 6, 2011, ECF No. 46.  This Court determined that Bond's Amended Complaint was futile and that it failed to establish either subject matter jurisdiction or state a claim upon which relief could be granted with respect to the Federal defendants.  *Id.* at 17.  With regard to the Post, this Court dismissed plaintiff's suit on

similar grounds.[3] *Id.* at 25.  In response, plaintiff filed the instant Motion to Alter or Amend the

Court's Judgment, Motion for Relief from Judgment, Motion for Discovery and Motion to

Expedite with Request for a Hearing.  Mot. Alter/Amend1, Jan. 3, 2012, ECF No. 50.

Plaintiff offers the following arguments to persuade the Court that reconsideration is

warranted.  First, plaintiff asks this Court to reconsider its final Judgment, pursuant to Rule

59(e), arguing that "newly discovered evidence" proves the existence of a conspiracy against

him.  *Id.* at 17.  Plaintiff also raises the issue of his photographs for the first time, arguing that the

Washington Post should cease publishing them.  *Id.* at 30.  Although this Court dismissed his

claim because it was untimely, plaintiff now argues that a District of Columbia law—the

discovery rule, which is a statutory rule that applies when there is an obscure connection between

an alleged injury in fact and tortious conduct—should have prevented his claim from being

dismissed in the first place.  *Id.* at 19.  Plaintiff also argues that even if his claim was untimely,

the *Bivens* rule—which allows a party to recover against Federal officials in their individual

capacities—saves his claim because he has now individually named the Federal defendants

responsible for his woes.  *Id.* at 18.  Plaintiff's final argument in support of reconsideration

alleges that this Court committed a "clear error" when it dismissed his claim pursuant to Rule

12(b)(6), arguing that instead, it should have evaluated his claim utilizing a Rule 56 Summary

Judgment standard.  *Id.* at 13.  Plaintiff's second motion requests reconsideration pursuant to

Rule 60(a); plaintiff alleges that this Court made clerical errors that entitle him to the relief he

originally requested.  *Id.* at 10.  Plaintiff also petitions this Court for Discovery, citing Rules 56

and 27 for support.  *Id.* at 22.  Plaintiff's final motion consists of a motion to expedite, coupled

---

[3] The Court determined that plaintiff failed to state a claim upon which relief could be granted and that the plaintiff's amended complaint was futile.  *Id.* 25.

with a request for a hearing.  *Id.* at 33.  This Court denies plaintiff's motions in toto for the reasons explained below.

## III.    ANALYSIS

### A.    Motion to Alter/Amend a Judgment Pursuant to Rule 59(e)

Plaintiff proceeds *pro se* in this matter.  Although the Supreme Court has relaxed certain standards and rules when confronted with *pro se* filings by prisoners in criminal cases, it "ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."  *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see also Bowie v. Maddox*, 677 F. Supp. 2d 276, 281 (D.D.C. 2010).  While the Court will not excuse a *pro se* plaintiff's procedural missteps in a civil case, *see Bowie*, 677 F. Supp. 2d at 281, the Court will construe his filings liberally.  *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).

Plaintiff seeks reconsideration of the Court's dismissal of his claims against the Federal defendants pursuant to Rule 59(a)(2).[4]  As this rule is inapplicable to the instant motion, the Court will instead, look to Rule 59(e) for guidance in evaluating plaintiff's motion for reconsideration.  Rule 59(e) permits a party, within 28 days following entry of a judgment, to file a motion to alter or amend that judgment.  Fed. R. Civ. P. 59(e).  Such motions are "disfavored" and are reserved for "extraordinary circumstances."  *Liberty Prop. Trust v. Republic Props. Corp.*, 570 F. Supp. 2d 95, 97 (D.D.C. 2008) (quoting *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)).  "Extraordinary circumstance[s]" include (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear

---

[4] Fed. R. Civ. P. 59(a)(2) permits a Court, on a motion for a new trial after a nonjury trial, to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."  Since the instant case never proceeded to trial, jury or otherwise, applying a rule that specifically pertains to actions taken after a nonjury trial is inappropriate.

error or prevent manifest injustice.  *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057–58 (D.C. Cir.

1998).  Re-litigating arguments or legal theories, that could have been raised earlier, do not

qualify as an "extraordinary circumstance" under Rule 59(e).  *See Taylor v. DOJ*, 268 F. Supp.

2d 34, 35 (D.D.C. 2003).

Plaintiff has repeatedly modified his pleadings by adding new allegations in response to

the arguments of the defendants or the Opinion of this Court.  Plaintiff offers the following as

"new evidence," warranting reconsideration: (1) a 2007 New York Times article (which would

prove the existence of a conspiracy against him) and (2) the identifying information of individual

Federal defendants who conspired against him (which would allow him to recover pursuant to

the *Bivens* doctrine).[5]  Plaintiff now argues that the New York Times article bolsters his case

because it provides the logical connection between the "cause of his harm" and the Federal

defendants, which he previously lacked.[6]  Mot. Alter/Amend 16, Jan. 3, 2012, ECF No. 50.  This

article, however, is neither "new," nor was it "previously unavailable" because it has been

accessible to the public since 2007.  *See Messina v. Fontana*, 439 F. 3d 755, 759 (D.C. Cir.

2006) (explaining that Rule 59(e) applies to evidence that "was not previously available," as

opposed to newly asserted facts).  This Court finds it difficult to believe that plaintiff could not

proffer this evidence when it was timely—especially since he admitted that he worked with "due

---

[5] *Bivens v. Six Unknown Agents of Fed. Bur. of Narc.*, 403 U.S. 388 (1971).  As this Court has previously explained in its Dec. 6, 2011, Memorandum Opinion, to state a cognizable *Bivens* claim against Federal officials acting in their individual capacities, a plaintiff must plead facts that, when accepted as true, show he is entitled to relief for a violation of his constitutional rights in which the named defendants were personally involved.  *See Simpkins v. District of Columbia*, 108 F.3d 366, 369 (D.C. Cir. 1997) ("The complaint must at least allege that the defendant Federal official was personally involved in the illegal conduct."), *cf. Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993) ("In the absence of any allegations specifying the involvement of [individual officer-defendants] in this case, the claims against them are based on nothing more than a theory of respondeat superior, which of course cannot be used in a *Bivens* action.").

[6] Plaintiff admits that he did not realize the significance of the New York Times article until the summer of 2010.  *Id.*

diligence" for years to determine his cause of action.  Mot. Alter/Amend 16, Jan. 3, 2012, ECF
No. 50.

   Similarly, Bond also argues that he has "new evidence" because he has now identified the
individual Federal defendants who conspired against him.  Mem. Op. 15–18, Dec. 6, 2011, ECF
No. 46.  But handing the Court a list of names will not solve plaintiff's problem: for Bond's
motion to succeed, he needed to provide the Court with substantiating evidence that the named
individuals actually conspired against him.  *Id.*  Without this evidence, he cannot persuade a
Court to reconsider its Judgment.  *Id.*  A motion for reconsideration is not an avenue for plaintiff
to complain about the Court's ruling if he does not allege previously unavailable evidence or
where as here, he simply tries to include evidence that this Court has already precluded.[7]  *See
Taylor*, 268 F. Supp. 2d at 35.

   Rule 59(e) motions are not vehicles that disgruntled plaintiffs may use to litigate novel
claims or assert innovative legal theories for the first time.  *See Lurie v. Mid-Atlantic
Permanente Medical Group, P.C.*, 787 F. Supp. 2d 54, 63 (D.D.C. 2011).  Plaintiff argues two
novel legal theories in response to the Court's Opinion: (1) that the Court should force the Post
to release the rights to his portrait sessions and; (2) that the Discovery Rule rebuts the Court's
determination that his claim was untimely.  Mot. Alter/Amend 30, Jan. 3, 2012, ECF No. 50.
With respect to the Post defendants, Bond alleges that he has new evidence "for the first time in
detail" regarding a new legal issue—his photographs.  *Id.*  A Motion to Alter or Amend is used
solely to evaluate the Court's judgment on claims that were before the Court when it passed its
initial judgment—it is not an avenue for plaintiffs to re-litigate entirely new claims.  *See
Messina*, 439 F. 3d 755 at 759.  That plaintiff has new evidence regarding a novel claim (here,

---

[7] This Court, in its Dec. 6, 2011, Memorandum Opinion, did not allow plaintiff to amend his second
complaint to include these names.  Mem. Op. 22, Dec. 6, 2011 ECF No. 46.

his photographs) is irrelevant to the current motion.  Similarly, plaintiff's reliance on the

discovery rule is misguided.[8]  Plaintiff's use of the discovery rule is a ruse simply designed to

assert a novel legal theory, which he could have articulated prior to this Court's Opinion.  *See*

*Lurie*, 787 F. Supp. 2d at 63.  Since Bond failed to do so when appropriate, this Court will not

entertain his current motion to alter its Judgment.

Plaintiff essentially argues (without explicitly explaining this in his Motion) that the

Court committed a clear error under Rule 59(e) when it evaluated his first motion using the Rule

12(b)(6) motion to dismiss standard.  Mot. Alter/Amend 13, Jan. 3, 2012, ECF No. 50.  Plaintiff

argues that the Court should have used a Rule 56 summary judgment standard, *id.,* basing his

mistaken belief on a footnote in this Court's Memorandum Opinion.[9]  Mem. Op. 2, Dec. 6, 2011,

ECF No. 46.  This Court, however, did not commit a clear error when it evaluated plaintiff's

claim pursuant to Rule 12(b)(6).  Although Courts have not generally defined what constitutes

"clear error" under Rule 59(e), *Lightfoot v. Dist. of Columbia*, 355 F. Supp. 2d 414, 422 (D.D.C.

2005), what can be learned from scarce case law on the subject is that clear error should conform

to a "very exacting standard."  *Id.*  (quoting *Hopwood v. Texas*, 236 F.3d 256, 272 (5th Cir.

2000)).  District Courts should have "a clear conviction of error" before finding a final judgment

was predicated on clear error.  *Id.*  The Seventh Circuit declared that a final judgment must be

"dead wrong" to constitute clear error.  *Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*,

866 F.2d 228, 233 (7th Cir. 1988).

Plaintiff argues that the Court "deprived him of his rights" when the Court determined

that it would only consider the exhibits incorporated into his complaint.  Mot. Alter/Amend 14,

---

[8] The District's discovery rule applies when there is an obscure connection between the fact of injury and the alleged tortious conduct.  *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472–73 (D.C. 1994).

[9] In relevant part, this footnote explains that "the Court considers only the well-pleaded factual allegations set forth in Bond's amended complaint and the exhibits attached to Bond's memoranda insofar as they are incorporated by reference into the complaint."  Mem. Op. 2, Dec. 6, 2011, ECF No. 46.

Jan. 3, 2012, ECF No. 50; Mem. Op. 2, Dec. 6, 2011, ECF No. 46.  Plaintiff argues that if his claim were evaluated using a summary judgment standard, this Court could consider additional evidence that was not incorporated into the complaint.  Mot. Alter/Amend 13, Jan. 3, 2012, ECF No. 50.  But plaintiff's belief reflects a basic misunderstanding of the law—his claims did not fail for lack of factual evidence, rather, the Court assumed that all of his allegations were true.  *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (explaining that a Court construes the allegations and facts in a complaint in a light most favorable to the plaintiff and it must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged when it consider a Motion to Dismiss).  Summary judgment is only appropriate when there are no genuine issues of material fact and the only remaining issue is one of law, not where as here, the claim is legally deficient.  Fed. R. Civ. P. 56.  If this Court were to evaluate his claim using a summary judgment standard, however, it would have to view the evidence in favor of the non-moving party, which in this case would be the defendants.  *See. e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Because plaintiff could not succeed on his motion when the facts were construed in the light most favorable to him, he certainly could not succeed if the Court viewed the facts in the light most favorable to the defendants.  Thus, this Court was not "dead wrong" when it determined that plaintiff failed to state a claim pursuant to Rule 12(b)(6).  Mem. Op. 2, Dec. 6, 2011, ECF No. 46; *see Conley*, 355 U.S. at 45–46.

**B.    Plaintiff's Motion for Relief from Judgment Pursuant to Rule 60(a)**

In his motion, plaintiff argues that Rule 60(a), which permits a party to petition for relief from a Judgment or Order on the basis of clerical error, applies to the Court's Memorandum Opinion.  The word "clerical," however, does not imply that Rule 60(a) remedies only ministerial errors.  *Jones & Guerrero Co. v. Sealift Pacific*, 650 F.2d, 1072, 1074 (9th Cir. 1984).

Rule 60(a) also allows correction of clerical mistakes when they are not committed by the Office of the Clerk of Court (or by the chambers' clerical staff), since the purpose of Rule 60(a), is "to make an order reflect the actual intentions of the Court, plus necessary implications." *Id.* The Third Circuit defines a 'ministerial error' as encompassing "only errors mechanical in nature, apparent on the record and not involving an error of substantive judgment," or including only "mindless and mechanistic mistakes [and] minor shifting of facts." *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 129–130 (3d Cir. 2005). Although the Court has the power to correct such mistakes, a party may not use "the power to correct inadvertent ministerial errors . . . as a guise for changing previous decisions." *Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 146 (1958).

Plaintiff argues that the Court must grant him relief pursuant to Rule 60(a) because its Memorandum Opinion incorrectly identified the position of one Federal defendant, incorrectly stated that plaintiff failed to identify a Federal judge and also described the plaintiff as having a "criminal record." Mot. Alter/Amend 7, 10, 14, Jan. 3, 2012, ECF No. 50. As an initial matter, plaintiff argues that these mistakes are a "clear error" on the part of the Court, warranting reconsideration under Rule 59(e). These minor "errors," however, fail to withstand Rule 59(e) scrutiny. Mot. Alter/Amend 32, Jan. 3, 2012, ECF No. 50. Similarly, plaintiff's reliance on Rule 60(a) is misguided. Since making these minute, factual changes will not alter the Opinion of the Court, these "errors" cannot be considered a "ministerial error." *See Pfizer*, 422 F.3d at 129–130. Rule 60(a) shall not be used where the plaintiff seeks to change facts in what is nothing more than a thinly veiled request for the Court to alter its judgment. *See Am. Trucking Ass'ns*, 358 U.S. at 146.

### C.       Plaintiff's Motion for Discovery

Although plaintiff has also filed a motion for discovery, citing Rules 56 and 27, plaintiff's reliance on these rules is misguided.  Rule 56 applies to motions for summary judgment.  While the plaintiff has expressed his belief that this Court improperly used the Rule 12(b)(6) standard when it evaluated his complaint, as explained above, the Court did not commit a legal error.  Similarly, plaintiff's reliance on Rule 27 is misguided.  A Rule 27 motion may be granted if the Court is "satisfied that perpetuating the testimony may prevent a failure or delay of justice."  Fed. R. Civ. P. 27(e).  A Rule 27 motion, however, "is not a method of discovery to determine whether a cause of action exists; and if so, against whom action should be instituted." *Petition of Gurnsey*, 223 F. Supp. 359, 360 (D.D.C. 1963); *see also Biddulph v. United States*, 239 F.R.D. 291, 293 (D.D.C. 2007) (denying a Rule 27 petition where petitioner's interest is in "assessing the viability of various causes of action in advance of filing a complaint.").  While Bond properly filed his complaint prior to petitioning for Rule 27, his January 3, 2012, filing makes it perfectly clear that he intends to use any potential depositions as an opportunity to determine details about his cause of action, which the Court has already dismissed.  Indeed, plaintiff explains that "it is impossible for plaintiff to plead to the Court exactly what person did exactly what to plaintiff" because "[t]he harm caused to plaintiff has been very well hidden from plaintiff."  Mot. Alter/Amend 22, Jan 3, 2012, ECF No. 50.  Plaintiff failed to state of cause of action in his first complaint and he has yet to present a plausible claim to this Court.  Just as David must ensure that he is prepared for his battle with Goliath, so too must Bond—it is not this Court's responsibility to give him the stones for his sling.  Thus, this Court must deny plaintiff's motion for discovery.

     **D.**      **Motion to Expedite with Request for a Hearing**

Plaintiff finally requests that this Court both expedite his motion and grant his request for a hearing.  Both of these motions are moot as this Court is denying plaintiff's Motion to Alter or Amend its Judgment.

**V.**     **CONCLUSION**

For the aforementioned reasons, this Court will deny with prejudice plaintiff's Motion to Alter or Amend the Court's Judgment, Motion for Relief from Judgment, and Motion for Discovery.  Plaintiff's Motion to Expedite with Request for a Hearing is denied as moot.  An appropriate order accompanies this Memorandum Opinion.

Signed by Royce C. Lamberth, Chief Judge, on July 2, 2012.